UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAEVION LEWIS,

      Plaintiff,

      v.                            Case No. 26-cv-0855-bhl

OFFICER MCWAY,
OFFICER RILEY,
RN BLISH,
JANE DOE NURSES, and
LT. PITTS,

      Defendants.

---

## SCREENING ORDER

---

Plaintiff Daevion Lewis, who is currently serving a state prison sentence at Redgranite Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Lewis's motion for leave to proceed without prepaying the full filing fee, his motion to appoint counsel, and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Lewis has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Lewis has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $138.38. Lewis's motion for leave to proceed without prepaying the filing fee will be granted.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any

complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

On February 19, 2026, Lewis was being temporarily housed at the Milwaukee County Jail to attend a court hearing. Lewis asserts that he was transported to the day room to be evaluated by medical staff as part of the booking process. Lewis explains that, upon arriving in the day room, he walked to the security desk to get his legal documents. According to Lewis, Defendant Officers McWay and Riley informed him he could not approach the desk, and a sergeant instructed him to return his legal materials. Lewis asserts that he complied without any disruptions or resistance.

Lewis asserts that, as he walked back to his seat, he noticed that McWay and Riley were following him. McWay allegedly started making derogatory comments to Lewis. Lewis asserts that he felt unsafe, so he decided to report the alleged misconduct to the sergeant at the security

2

desk. According to Lewis, before he could get to the sergeant, McWay and Riley grabbed his arms and slammed him on the ground headfirst. Lewis asserts that he cried out in pain.

About half an hour later, Lewis was seen by Nurse Blish. He states that he told her he was in "agonizing pain" in his head, face, and torso and that he was dizzy from being slammed to the ground. According to Lewis, McWay and Riley told Blish not to give him any pain medication or ice. Blish allegedly refused Lewis's request for ice and pain medication. Lewis asserts that he repeatedly asked for "medical attention" but was ignored. He states that he was taken to segregation, where he pressed his medical emergency button. According to Lewis, he was seen by two Jane Doe Nurses. He states that he told them he was in pain, was unable to sleep, and was anxious and dizzy, but they refused to treat him.

Lewis states that Lt. Pitts eventually pulled him out of his cell regarding the conduct report that McWay had written. He states that Pitts told him that she was finding Lewis guilty and that it didn't matter what he had to say. Lewis asserts that he was not given an opportunity to explain the situation or contest the ticket. According to the Department of Corrections online inmate locator, Lewis was returned to Redgranite Correctional Institution on February 24, 2026, about five days after he arrived at the jail.

## THE COURT'S ANALYSIS

Lewis first asserts that McWay and Riley violated the Eighth Amendment when they slammed him to the ground even though he was compliant with orders and posed no threat to himself or others. The "central question" when evaluating whether force used against a prisoner is excessive is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Fillmore v. Page*, 358 F.3d 496, 503 (7th Cir. 2004) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Under this standard, Lewis's allegations regarding McWay and Riley's actions are sufficient to state an excessive force claim against them.

The Court will also exercise supplemental jurisdiction over a state-law intentional infliction of emotional distress claim against McWay and Riley. "To recover damages for intentional infliction of emotional distress, a plaintiff must show: 1) that the defendant's conduct was intentional, that is, the defendant behaved as he did for the purpose of causing emotional distress; 2) that the defendant's conduct was extreme and outrageous; 3) that defendant's conduct caused the plaintiff injury; and 4) that the plaintiff suffered an extreme and disabling emotional response

3

to the conduct." *Kennedy v. Children's Serv. Soc. of Wisconsin*, 17 F.3d 980, 986 (7th Cir. 1994). According to Lewis, McWay and Riley called him derogatory names and used significant force against him without any reason to do so. Lewis also asserts that he became anxious and could not sleep as a result of their actions. These allegations are sufficient to state a claim.

Lewis does not, however, state a claim of negligent infliction of emotional distress against McWay and Riley. To state such a claim, a plaintiff must allege that 1) the defendant's conduct was negligent; 2) the plaintiff suffered emotional distress; and 3) the defendant's conduct caused the plaintiff injury. *Bowen v. Lumbermens Mutual Casualty Co.*, 183 Wis.2d 627, 653 (Wis. 1994). As already noted, Lewis alleges that McWay and Riley's actions were intentional, not negligent. He therefore fails to state a claim of negligent infliction of emotional distress against them.

Although a close call, the Court will also allow Lewis to proceed on Eighth Amendment medical care claims against the three nurses who allegedly refused to provide medical treatment after Lewis informed them he was in pain, dizzy, anxious, and unable to sleep. The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id*. (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)). At this early stage, Lewis has alleged just enough for the Court to reasonably infer that he was suffering from an objectively serious medical condition and that the nurses were deliberately indifferent to that condition. After the named Defendants have an opportunity to respond to the complaint and the Court enters a scheduling order, Lewis will have to use discovery to learn the names of the Jane Doe nurses.

Lewis does not, however, state claims of intentional or negligent infliction of emotional distress against the nurses. Lewis alleges that he was in pain after being aggressively taken to the ground. He does not allege that he had broken bones or abrasions or that he was vomiting or lost consciousness. He states that he asked for an ice bag and over-the-counter pain medication, but the officers said Lewis should not be provided with the relief he requested. The Court cannot reasonably infer that the nurses' decision to defer to the officers' instructions and withhold comfort items such as an ice bag or Tylenol was "extreme and outrageous" or that their refusal to give Lewis the relief he demanded was for the very purpose of causing Lewis emotional harm. As the Seventh Circuit has explained, "[e]xtreme or outrageous behavior means that 'the average member of the community must regard the defendant's conduct in relation to the plaintiff as being a

4

complete denial of the plaintiff's dignity as a person. This is a high standard, and Wisconsin courts have been reluctant to find conduct sufficiently extreme to meet this test." *Id.* at 986-87. Refusing to agree to an inmate's demand for ice and Tylenol to address vague and general symptoms of pain when there are no visible injuries is not sufficiently extreme to satisfy the standard. Moreover, while the Court acknowledges Lewis's allegations that he suffered anxiousness, an inability to sleep, and other emotional harm, these responses were in response to the officers' alleged unprovoked use of force against him, not in response to the nurses' refusal to provide him with a bag of ice and/or over-the-counter pain medication.

Lewis also does not state a due process claim against Pitts based on allegations that she found him guilty of the conduct report without giving him an opportunity to tell his side of the story. "To succeed on a due process claim stemming from a prison disciplinary proceeding, an inmate must demonstrate (1) a constitutionally protected liberty interest and (2) deficient procedures attendant to the deprivation of that interest." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024). Lewis spent no more than five days in segregation before he was transported back to the prison. Under Seventh Circuit precedent, standing alone, any stay in segregation for less than six months "is not enough to implicate a liberty interest that triggers due process rights." *Id*. Because the Court cannot reasonably infer that Lewis had a constitutionally protected liberty interest, he fails to state a due process claim.

Finally, on May 15, 2026, Lewis filed a motion to appoint counsel. Lewis asserts that he suffers from anxiety, depression, memory loss, and PTSD. He also explains that he has limited education and has relied on the help of other inmates. In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)). Accordingly, in exercising its discretion, the Court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan*

5

*v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)).

It appears that Lewis has satisfied the first prong of the standard by making efforts to locate counsel without the Court's help. Nevertheless, the Court will deny his motion because it appears that he is capable of representing himself through summary judgment. When considering whether a plaintiff has the capacity to represent himself, the Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Pennewell v. Parish*, 923 F.3d 486, 491 (7th Cir. 2019).

Lewis asserts that he has limited education and mental health challenges and has had to rely on the help of other inmates to prepare his materials. Regrettably, these circumstances are true of many, if not most, prisoner litigants and are not sufficient on their own to warrant recruiting a lawyer to represent a prisoner on a volunteer basis. Lewis's claims are straightforward, and he has personal knowledge of the facts underlying that claim. Lewis offers no information supporting a conclusion that he lacks the capacity to participate in discovery or tell the Court his version of what happened. Accordingly, the Court will deny Lewis's motion to appoint counsel at this time. Along with this decision, the Court is providing a litigation guide prepared by Court staff that includes information, including a glossary of common legal terms, which Lewis may find helpful as he proceeds with this case. If new challenges arise that Lewis does not believe he can overcome on his own, he may renew his motion. If he does so, he should be specific about the challenges he faces and the efforts he has made to overcome them.

**IT IS THEREFORE ORDERED** that Lewis's motion for leave to proceed *in forma pauperis* (Dkt. No. 5) is **GRANTED**.

**IT IS FURTHER ORDERED** that Lewis's motion to appoint counsel (Dkt. No. 2) is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that Lewis fails to state a claim against Lt. Pitts, so the clerk's office is instructed to terminate her from this action.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between Milwaukee County and this Court, copies of Lewis's complaint and this order are being electronically sent today to Milwaukee County for service on Officer McWay and Officer Riley.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between Milwaukee County and this Court, Officer McWay and Officer Riley shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon RN Blish pursuant to Federal Rule of Civil Procedure 4. Lewis is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that RN Blish shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Lewis is located.

**IT IS FURTHER ORDERED** that the agency having custody of Lewis shall collect from his institution trust account the $211.62 balance of the filing fee by collecting monthly payments from his prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Lewis is transferred to another institution, the transferring institution shall forward a copy of this Order along with Lewis's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution,

7

and Oshkosh Correctional Institution.  Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS.  It will only delay the processing of the matter.

Lewis is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.  In addition, the parties must notify the Clerk of Court of any change of address.  Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners.  Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Plaintiff may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin this 13th day of July, 2026.

> s/ *Brett H. Ludwig*
> BRETT H. LUDWIG
> United States District Judge

8